OPINION
This matter presents a timely appeal from a judgment rendered by the Mahoning County Common Pleas Court, finding defendant-appellant, Ricky D. Mayer, guilty of kidnaping, in violation of R.C. 2905.01, and guilty on two counts of aggravated robbery, in violation of R.C. 2911.02 and R.C. 2911.01, along with his subsequent sentencing thereon.
In November, 1995, Marcie Reagan (the victim), who has a mental disability, was introduced to appellant. (Tr. 13). After a short period of time, the victim and appellant developed a close relationship and the victim allowed appellant to stay at her home for four days. The day before the incident occurred, the victim and appellant engaged in an argument after the victim alleged that appellant had stolen money from her home. (Tr. 22, 63).
On November 9, 1995, the victim went to work with her brother, Richard Reagan (Reagan) at Reagan's restaurant and after work Reagan drove the victim to her home between 5:00 and 5:15 p.m. (Tr. 100). When the victim entered her home, appellant grabbed her and forced her into the bedroom. (Tr. 30-37). Appellant proceeded to tie the victim up with cat leashes and nylons and stuffed a sock into her mouth. (Tr. 30-37). Appellant then threw a blanket over the victim's head. (Tr. 37)
On the morning of November 10, 1995, Reagan arrived at the victim's home so that he could drive her to work. Upon arriving, he noticed that she was not waiting for him and he heard a muffled cry for help. (Tr. 101). Reagan entered the victim's home and discovered that she was lying on the floor, with her ankles and hands bound and a rope wrapped around her neck. (Tr. 102). After freeing the victim, Reagan and the victim discovered that the victim's VCR, jewelry, and some money were missing. (Tr. 116).
Appellant was subsequently arrested and charged with kidnaping and two counts of aggravated robbery. A jury trial began on May 20, 1996, wherein appellant was tried on the kidnaping charge and on one count of aggravated robbery. The jury ultimately found appellant guilty of both kidnaping and aggravated robbery. Appellant subsequently pled guilty to a second count of aggravated robbery which he had perpetrated against a second victim, unrelated to the present case. The trial court sentenced appellant to serve an indefinite incarceration term of not less than ten nor more than twenty-five years for kidnaping; an indefinite incarceration term of not less than ten nor more than twenty-five years for the first count of aggravated robbery; and an indefinite incarceration term of not less than five nor more than twenty-five years for the second count of aggravated robbery. These sentences were to be served consecutively. This appeal followed.
Appellant sets forth two assignments of error on appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF APPELLANT, ABUSED ITS DISCRETION IN VIOLATION OF RULES 403, 404 AND 609 OF THE OHIO RULES OF EVIDENCE ALLOWING INTO THE TRIAL INFORMATION OF APPELLANT'S PRIOR CONVICTIONS WHICH BY ITS ADMISSION TAINTED THE JUDICIAL PROCESS BY CAUSING CONFUSION AND UNFAIR PREJUDICE WHICH SUBSTANTIALLY OUTWEIGHED THE PROBATIVE VALUE OF THE EVIDENCE."
A trial judge has broad discretion in admitting evidence. Statev. Wright (1990), 48 Ohio St.3d 5. A reviewing court will not interfere with a trial court's admission of evidence unless the trial court has abused its discretion. State v. Allen (1995),73 Ohio St.3d 626. A trial court abuses its discretion when its acts are unreasonable, arbitrary or unconscionable. State v. Finnerty (1989), 45 Ohio St.3d 104.
Appellant argues that the trial court erred when it permitted the prosecutor to mention his prior convictions during cross-examination when the prosecutor questioned:
 "Q. Ricky Mayer, you told this jury that you've been in a lot of trouble with the police —
"A. Yes.
"Q. — over the years, correct?
"A. Yes, sir.
 "Q. And that's kind of an understatement, isn't it?
"A. What do you mean by that?
 "Q. You've been in more than a lot of trouble with the police over the years.
 "A. Not more — that ain't an understatement I've been in a lot of trouble.
 "Q. Let's talk about your felony and theft convictions in the past ten years.
"A. Okay.
 "Q. You were convicted of grand theft in Mahoning County Court of Common Pleas, this Court of Common Pleas, 6-20-86, in case no. 85 CR 466. Do you remember that conviction?
"A. Yeah.
"Q. You got a year on that, right?
"A. Yes.
 "Q. In the Girard Municipal Court you were convicted of theft on 6-2-87, Case No. 87 CR 298, correct?
"A. Yes, sir.
 "Q. In the Mahoning County Court once again, this time the date being 3-8-88, you were convicted of the felony of vandalism in 88 CR 134. You got six months on that, right?
"A. Yes.
 "Q. Crossed the border into Trumbull County, 88 CR 461, and you were convicted of breaking and entering January 10th, 1989, and you got six months on that felony, right?
"A. Yes, sir.
 "Q. Skip the vandalism. Back again in Youngstown, 88 CR 134, Mahoning County Court of Common Pleas, you were convicted of vandalism, and you got six months on that, didn't you?
"A. Yes.
"Q. Pled by way of information on that one?
"A. Yeah.
 "Q. You moved on out to California and your problems with the police officers didn't stop out there, did they?
"A. No, they did not.
 "Q. On the date of 4-9-1990, you were convicted of the felony of inflicting corporal injury upon a cohabitor, were you not, Van Nuys, California, Los Angeles?
"A. Yes.
"Q. And you got a year on that, didn't you?
"A. Yes.
"Q. California gave you probation on that?
"A. Yes.
 "Q. And you violated your probation, didn't you?
"A. Yes, I did.
"* * *
 "Q. You haven't gone to prison — okay. In "82 (sic) you moved on to Lincoln, Nebraska?
"A. Yes, sir.
 "Q. On 12-28-92 you were convicted of a felony of damaging property in Lincoln, Nebraska, and you got a sentence of 20 months to three years in that case, right?
"A. That was.
 "Q. That's the one where you wanted to get into prison?
 "A. That's when I assaulted the guy over my friend.
 "Q. Yeah, but you had to get into prison to do that, right?
 "A. Had to get into jail to do that, not prison.
 "Q. Okay. And that's why you told the ladies and gentlemen of the jury you committed that offense in Nebraska, because you're a chivalrous kind of guy?
"A. Because that was my friend.
 "Q. Right. And despite the fact you have all these other convictions, your're willing to go to the joint once again because you're an honorable guy, you're going to beat up somebody who violated a friend of yours?
"MR. WISE: Objection, argumentative.
"THE COURT: Overruled." (Tr. 263-267)
Appellant argues that prior to the prosecutor's questioning of these other crimes, the trial court stated that a proper showing would be needed before such evidence would be admitted for impeachment purposes. (Tr. 90). Appellant argues that although the trial court stated that a proper showing would be needed, such showing did not occur and the trial court nonetheless permitted the prosecutor to question appellant about his previous convictions. Appellant further alleges that the trial court did not conduct an Evid.R. 403 balancing test, and had it conducted such a balancing, it would have been clear that the probative value of the prior conviction evidence would have been outweighed by the prejudice of such evidence.
The underlying policy for preventing a trial court from admitting evidence of "other wrongs" during a trial for a second, unrelated crime was best stated by the Ohio Supreme Court in State v. Allen (1987), 29 Ohio St.3d 53, 55, wherein it held, "The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand." However, in State v. Pollard
(1970), 21 Ohio St.2d 171, 174, the Ohio Supreme Court held that, "The defendant cannot complain about the prosecutor cross-examining him concerning his past convictions under state law of Ohio and other states because he volunteered this information upon direct examination by his own counsel."
Although the prosecutor questioned appellant about his prior convictions, this questioning came after defense counsel mentioned such convictions during the direct examination of appellant, stating:
"Q. Do you know a lot of police officers?
"A. Yes, sir.
"Q. How do you know the police officers?
 "A. I got to know them through the years. I've been in a little bit of trouble off and on, and I met with them dealing with them and became friends with them, and I became friends with them and, you know, had dealings with them when they was offered.
"* * *
 "Q. Now, when you say, though, that you care for people, you've had some problems in the past, haven't you?
"A. Yes, I have.
"Q. You had a problem in Nebraska?
"A. Yes.
"Q. Did you beat someone up in Nebraska?
"A. Yes, sir.
"Q. You want to tell this jury what happened?
 "A. A friend — when I went to Nebraska in `92, a friend of mine got raped, and the guy was in jail, so I took it upon myself to get in jail some way. I didn't want to break the law in any kind of way, so I took a car, and I raced around town so the cops would eventually arrest me so I could, so I could get put in jail to get to this guy. I got put in jail, and I got to the guy who raped my friend.
"Q. What did you do?
 "A. I beat the guy up. I tore the jail up. And they gave me some time in the penitentiary down there.
 "Q. Did you — strike that, please. You've had some charges here in Mahoning County as well?
 "A. Yes, sir. My temper gets the best of me, sir. It gets me in a lot of trouble." (Tr. 247; 258-259)
Since defense counsel questioned appellant concerning his prior convictions on direct examination, appellant may not now complain that the prosecutor improperly cross-examined him on these prior convictions. Pollard, supra. Furthermore, the trial judge instructed the jury to consider the evidence of other crimes only in reference to evaluating appellant's credibility, thereby reducing the possibility of prejudice. (Tr. 321-322). Therefore, the trial court did not abuse its discretion in allowing the prosecutor to question appellant on his prior convictions.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT DENIED APPELLANT DUE PROCESS UNDER THE FOURTEENTH AMENDMENT DUE TO THE FACT HE WAS FOUND GUILTY OF KIDNAPPING, PURSUANT TO ORC 2905.01(A)(2)(C) AND AGGRAVATED ROBBERY, PURSUANT TO ORC 2911.02(A)(2)(B) WHEN SAID CONVICTION WAS NOT BASED UPON SUFFICIENT EVIDENCE DISPLAYING APPELLANT'S GUILT BEYOND A REASONABLE DOUBT AND THE JURY'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL."
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins, supra. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, supra, at 113.
Alternatively, in determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Thompkins, supra, at 387. "Weight of the evidence concerns `the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Thompkins, supra at 387. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Thompkins, supra, at 390, (Cook, J., concurring). The State must first have presented sufficient evidence to support the conviction before a reviewing court can determine whether the State persuaded the jury to convict.Thompkins, supra.
Although appellant's second assignment of error alleges that his conviction was not supported by the sufficiency of the evidence, appellant's argument focuses on the manifest weight of the evidence. Appellant argues that the victim's testimony concerning the night in question was different from his testimony. Appellant states that the victim testified that she was attacked between 5:30 and 6:00 p.m. (Tr. 70-71). Appellant argues that he was at Grace Toth's home at that time, which was evidenced by the fact that Mrs. Toth called a taxi cab for him at 6:02 p.m. (Tr. 221). Appellant argues that this evidence is conflicting and places him in two places at once, which is impossible.
Appellant also argues that the victim's testimony was unreliable and self-serving. Appellant states that the victim testified that she was robbed on two other occasions and on both occasions the same VCR and jewelry were stolen. (Tr. 58). Appellant argues that this testimony was self-serving because it was unlikely that the same objects were stolen each time the victim was robbed. Moreover, appellant contends that the victim was mentally disabled and that such disability limited her ability to comprehend what was happening, which made her testimony unreliable. Appellant further asserts that the victim was coached on how to testify and that the prosecutor was permitted to ask leading questions, which also made the victim's testimony unreliable. Appellant concludes that this case essentially placed his testimony against the victim's testimony, and because the victim's testimony was unreliable and self-serving, his conviction was not based upon sufficient, credible evidence.
The victim's testimony was not unreliable or self-serving. The victim provided a lengthy description about her meeting of appellant and also about her attack on November 9, 1995. (Tr. 13, 30). The victim testified that appellant threatened to kill her if she screamed. (Tr. 34). This illustrates that the victim did not merely give simple testimony obtained by leading questions. Furthermore, the victim testified that she was robbed in the past, but referred to the stolen items generically in stating that her VCR and jewelry were taken. Therefore, appellant's argument that the victim testified that the same items were stolen again is unfounded.
Furthermore, the testimony presented at trial demonstrated that appellant was not in two places at one time. Reagan testified that he dropped the victim off at her home between 5:00 and 5:15 p.m. (Tr. 100). The victim testified that she was attacked and tied up by appellant between 5:30 and 6:00 p.m. (Tr. 70-71). Grace Toth, a neighbor of the victim, testified that appellant came to her home and acted strange, which made her nervous. (Tr. 215-216). Mrs. Toth further testified that she immediately called a cab for appellant, and the cab company's records indicated that the call was received at 6:02 p.m. (Tr. 221). Mrs. Toth's husband, Jack Toth, testified that his house was close to the victim's home and that the distance could be traveled in a couple of minutes. (Tr. 208). Furthermore, appellant testified that he walked from the victim's home to the Toth residence on the night in question, which took him five to ten minutes. (Tr. 256). This testimony indicated that appellant had time to attack and rob the victim and walk to the Toth residence, where Mrs. Toth called a taxi cab.
Given the testimony presented, and viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence upon which to base appellant's conviction as any rational trier-of-fact could have found the essential elements of kidnaping and aggravated burglary beyond a reasonable doubt. Furthermore, appellant's conviction was supported by the manifest weight of the evidence as the jury did not clearly lose its way and create a manifest miscarriage of justice.
Appellant's second assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
DONOFRIO, J., concurs.
WAITE, J., concurs.
APPROVED:
 ___________________________________ EDWARD A. COX, PRESIDING JUDGE